[Cite as *State v. Clark*, 2011-Ohio-6030.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-100693 |
| | | TRIAL NO. B-0904410(B) |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| JAYSHAWN CLARK, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: November 23, 2011

*Joseph T. Deters,* Hamilton County Prosecuting Attorney and *Ronald W. Springman,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Christine Y. Jones,* for Defendant-Appellant.

Please note: This case has been removed from the accelerated calendar.

**CUNNINGHAM, Judge.**

{¶1}    Following a jury trial, defendant-appellant Jayshawn Clark appeals the convictions and sentences imposed for the attempted murder of Derryan Holland, with an accompanying firearm specification, and for having a weapon under disability.  Clark and co-defendant Fonta Whipple had had a long-running feud with Holland over Holland's sexual relationship with Whipple's girlfriend.  Whipple had accused Holland of shooting him in the hand.

{¶2}    On June 22, 2009, Clark and Whipple had obtained a ride from their friend Ashlee King.  The two had told King that they wished to visit Whipple's father.  But while passing the Bad Boyz Car Wash in Lockland, Ohio, Whipple and Clark spotted Holland and ordered King to stop the car.  The two left the vehicle, crouched behind a dumpster, and observed the scene in the car wash.  While Clark stood watch in the doorway, Whipple entered and fired at least ten shots with a 9-mm handgun at Holland, severely injuring him.

{¶3}    Returning to the car, Whipple joked that he had emptied the entire clip. He laughed that someone should call an ambulance.  Clark retorted that someone should call the coroner.  Whipple then called one of Holland's friends and taunted him to go and sit with Holland at the hospital.  After ordering King to return them to Hartwell, the two fled and were finally located together in a Kentucky motel room.

{¶4}    At the urging of her mother, King described Clark's and Whipple's role in the shooting to Lockland police officers.  King testified before the grand jury and was to have been the state's key witness at an April 2010 trial.  But after the jury trial had commenced, King refused to testify, claiming that she was afraid for her life.

{¶5}     The state called King to the stand and she asserted her privilege against self-incrimination.  The trial court ultimately granted her immunity and ordered her to testify.  Nonetheless King, fearing retaliation from Whipple and Clark, would not testify.  The trial court found her in contempt of court and ordered her jailed.  The trial court, concluding that it could not know when or if King would testify, granted the state's motion for a mistrial.  King ultimately spent 59 days in jail.

{¶6}     Following a hearing, the trial court approved a retrial on the grounds of manifest necessity.  At the second jury trial, begun in September 2010, King testified fully.  At the close of the trial, the court charged the jury on complicity under R.C. 2923.03.  It instructed the jury that if it found Clark had aided and abetted Whipple in the commission of the attack on Holland, it could find Clark guilty as if he were the principal offender.

{¶7}     The jury found Clark guilty of each charged offense and specification.  The trial court ultimately imposed an aggregate sentence of 18 years of imprisonment.

{¶8}     On appeal, Clark first asserts that the trial court erred in declaring a mistrial after King refused to testify and in then permitting a second trial to commence.  Clark argues that the trial court violated his constitutional right to be free from successive prosecution for the same offense.  See *North Carolina v. Pearce* (1969), 395 U.S. 711, 89 S.Ct. 2072.

{¶9}     There is no doubt that jeopardy had attached as the first jury had been empaneled and sworn before the court had declared a mistrial.  See *Crist v. Bretz* (1978), 437 U.S. 28, 98 S.Ct. 2156.  But retrial before a second jury was not barred by the Double Jeopardy Clause if there was either: (1) a manifest necessity for ordering a mistrial; or (2) a situation where the ends of public justice would be defeated without the order of mistrial.  See *State v. Glover* (1988), 35 Ohio St.3d 18, 19, 517 N.E.2d 900, citing *Arizona v.*

*Washington* (1978), 434 U.S. 497, 98 S.Ct. 824; see, also, *State v. Douthard* (June 29, 2001), 1st Dist. Nos. C-000354 and C-000355.

{¶10} Since the trial court was "in the best position to determine whether the situation in [the] courtroom warrant[ed] the declaration of a mistrial," the determination of whether to grant a mistrial was consigned to the discretion of the trial court. *State v. Glover*, 35 Ohio St.3d. at 19, 517 N.E.2d 900; see, also, *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, ¶42. To abuse this discretion, the court must have acted unreasonably, arbitrarily, or unconscionably. See *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144. If the court's exercise of its discretion, however, exhibited a sound reasoning process that supported its decision, this court will not disturb that determination. See *AAAA Enterprises, Inc. v. River Place Community Urban Redev. Corp.* (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597.

{¶11} Here, King had been cooperating with the prosecution until she refused to testify at trial. The trial court had granted King immunity from prosecution. It then held her in contempt of court and ordered her incarceration, but still she refused to testify.

{¶12} Unlike the trial court in *State v. Douthard*, here, the court seriously considered alternatives to declaring a mistrial, including employing King's recorded police statements or her grand jury testimony, or continuing the trial for a period of 30 days and then recalling the jury. It entertained the arguments of counsel, including that of King's court-appointed attorney, as to the merits and drawbacks of each alternative and thoroughly discussed each option with the parties.

{¶13} The trial court concluded that King was the key prosecution witness and that her absence because of threats of violence created the manifest necessity for a mistrial and subsequent retrial of Clark. See, e.g., *State v. Lanier*, 7th Dist. No. 06 MA 94, 2007-

Ohio-3172; *United States v. Khait* (S.D.N.Y. 1986), 643 F.Supp. 605. Since the trial court's decision was supported by a sound reasoning process, the first assignment is overruled.

{¶14} In four interrelated assignments of error, Clark challenges the weight and the sufficiency of the evidence adduced to support his convictions. Our review of the entire record fails to persuade us that the jury, acting as the trier of fact, clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered. See *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. The state adduced ample evidence that Clark had actively supported, assisted, and cooperated with Whipple in shooting Holland. Clark and Whipple had been together before and during the attack and had been captured together afterward. Clark had crouched behind the dumpster with Whipple moments before the attack and had stood in the doorway watching the assault. Clark had joked with Whipple afterward.

{¶15} Since the weight to be given to the evidence in this case and the credibility of the witnesses were for the trier of fact to determine, the jury was entitled to reject Clark's theory that he had merely accompanied Whipple to the car wash and had not participated actively in the shooting. See R.C. 2923.03(A); see, also, *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. The third assignment of error is overruled.

{¶16} The record reflects substantial, credible evidence from which the trier of fact could have reasonably concluded that all elements of the charged crimes had been proved beyond a reasonable doubt, including that Clark had participated actively in attempting to murder Holland. See *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶36. The second assignment of error is overruled.

{¶17} The trial court also properly denied Clark's motions for judgments of acquittal, as reasonable minds could have reached different conclusions as to whether

each element of the crimes charged had been proved beyond a reasonable doubt. See Crim.R. 29; see, also, *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 381 N.E.2d 184. The fourth assignment of error is overruled.

{¶18} Moreover, in light of our disposition of Clark's second and fourth assignments of error, we conclude that the trial court did not abuse its discretion by refusing to grant a new trial or to modify the verdict on grounds that insufficient evidence was presented at trial. Under Crim.R. 33, a motion for a new trial is directed to the sound discretion of the trial court, and the court's decision shall not be reversed on appeal absent an abuse of discretion. See *State v. Schiebel* (1990), 55 Ohio St.3d 71, 564 N.E.2d 54, paragraph one of the syllabus. The relevant inquiry is the same as the inquiry for sufficiency. See *State v. Condon*, 152 Ohio App.3d 629, 2003-Ohio-2335, 789 N.E.2d 696, ¶89. Having already found sufficient evidence supporting Clark's convictions for attempted murder and having a weapon under disability, we overrule the sixth assignment of error.

{¶19} Finally, Clark argues that the trial court erred in imposing an excessive sentence. The trial court had imposed consecutive sentences for an 18-year aggregate term of imprisonment: ten years for the attempted-murder offense, three years for the firearm specification, and five years for the weapon-under-disability offense. The sentences imposed were not contrary to law. See *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶14. They were within the statutory range specified for the offenses under R.C. 2929.14. See *State v. Boggs*, 1st Dist. No. C-050946, 2006-Ohio-5899, ¶6. In light of the seriousness of the offenses, and Clark's prior criminal record, including felony convictions for burglary and cocaine trafficking, we cannot say that the trial court abused its discretion in imposing sentence. See *State v. Kalish* at ¶17. The fifth assignment of error is overruled.

{¶20}   Therefore, the trial court's judgment is affirmed.

Judgment affirmed.

**SUNDERMANN, P.J.,** and **HENDON, J.,** concur.

Please Note:

The court has recorded its own entry on the date of the release of this opinion.