[Cite as *State v. Rodgers*, 2017-Ohio-9191.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-170057 |
| | | TRIAL NO. 15CRB-6908 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | |
| | | *O P I N I O N.* |
| DAVID RODGERS, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Reversed and Appellant Discharged

Date of Judgment Entry on Appeal:  December 22, 2017

*Paula Boggs Muething*, City Solicitor, *Natalia Harris*, City Prosecutor, and *Christopher Liu,* Assistant City Prosecutor, for Plaintiff-Appellee,

*Arenstein & Gallagher*, *William Gallagher* and *Elizabeth Conkin*, for Defendant-Appellant.

**ZAYAS, Judge.**

{¶1}   David Rodgers appeals his conviction in the Hamilton County Municipal Court for theft in violation of R.C. 2913.02(A)(1). Because the state failed to prove that Rodgers acted with purpose to deprive the owners of the property, we reverse the conviction and discharge Rodgers from further prosecution.

### Facts

{¶2}   Rodgers was charged with theft in violation of R.C. 2913.02(A)(1) for withdrawing $1,360 from the bank account of Maxine Jeffries after her death.

{¶3}   At the bench trial, the state presented evidence from Ryan Goodman, the branch manager at the Hyde Park Key Bank, who testified that Rodgers and Jeffries had come into the bank together to give Rodgers the authority to manage Jeffries's savings account. Goodman had them sign the required documents, and Rodgers was added to the account as a power of attorney. However, Goodman testified that the account was not converted to a joint account, and Rodgers's authority ended upon Jeffries's death.

{¶4}   The state presented evidence that Jeffries had died without a will, and that her two daughters, Stacy and Marsha, were the sole heirs to the Key Bank account. Each daughter testified that she had not given Rodgers permission to withdraw any funds.

{¶5}   Rodgers testified that he and Jeffries had recently become engaged and had been in a committed relationship for the past 14 years. During that time, they lived together and shared the living expenses. After she was diagnosed with cancer, he took care of her and made sure she had her

medicines, took her to treatment, and ensured she followed all of the doctor's instructions.

{¶6} In July 2014, Jeffries was admitted to the hospital. Upon her release, she was transferred to a nursing home because she could not walk. Rodgers stayed with her every day in the hospital and nursing home. After her hospitalization, Rodgers continued to pay all the bills, including their credit card debt, by himself.

{¶7} Rodgers testified that Jeffries had instructed him to withdraw her share of the bills from her account. Before Rodgers could withdraw the funds, Jeffries suffered a medical emergency and was transferred to a hospital where she died two days later. The following week, Rodgers withdrew the funds. He testified that he thought he was authorized to make the withdrawal because the account had been converted to a joint savings account. He also stated that he was in the process of transferring his account from Cincinnati Central Credit Union to the joint account and having his checks deposited into the joint account.

{¶8} The trial court found him guilty because the account was not a joint account despite Rodgers's genuine belief that it was.

### Legal Analysis

{¶9} In his first assignment of error, Rodgers asserts that the trial court erred in overruling his motions for acquittal under Crim.R. 29(A) on the ground that the evidence was insufficient to sustain a theft conviction. Specifically, he contends that the state failed to prove he had the purpose to deprive the owner of the property because he reasonably believed that the funds were in a joint account, and therefore belonged to him.

3

{**¶10**} Motions for an acquittal are reviewed under the same standard as a sufficiency-of-the-evidence claim. *State v. Benton*, 1st Dist. Hamilton Nos. C-130556, C-130557 and C-130558, 2014-Ohio-2163, ¶ 17. The relevant inquiry for the appellate court "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{**¶11**} R.C. 2913.02(A)(1) provides, in relevant part, that "no person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * without consent of the owner or person authorized to give consent." Purposely refers to a "specific intention to cause a certain result * * * ." R.C. 2901.22(A). Thus, "[t]heft is a specific intent crime." *State v. LeMasters,* 11th Dist. Lake No. 2007-L-129, 2008-Ohio-2139, ¶ 42.

{**¶12**} A "[m]istake of fact is widely recognized as a defense to specific intent crimes such as theft since, when the defendant has an honest purpose, such a purpose provides an excuse for an act that would otherwise be deemed criminal." *State v. Cooper*, 10th Dist. Franklin No. 09AP-511, 2009-Ohio-6275, ¶ 9; *State v. Snowden,* 7 Ohio App.3d 358, 363, 455 N.E.2d 1058 (10th Dist.1982). A mistake of fact can negate the intent element by showing that the person reasonably believed that what he took belonged to him. *Snowden* at 363; *State v. Griffin*, 6th Dist. Lucas No. L-11-1283, 2013-Ohio-411, ¶ 25.

{**¶13**} When issuing its decision, the trial court specifically stated, "[Rodgers] believed he had a joint account with Ms. Jeffries, but in actuality

4

and under the law, he did not." Since this court is left with the trial court's statement, we must conclude that Rodgers believed that he owned the funds and had the right to withdraw the funds. Because he had an honest purpose in withdrawing the funds that negated any criminal intent, the state failed to establish that Rodgers intended to deprive the owner of the funds. Rodgers's first assignment of error is well-taken, which renders his second assignment of error moot.

{¶14} Accordingly, we sustain the first assignment of error. The judgment of the trial court is reversed and Rodgers is discharged from further prosecution.

Judgment reversed and defendant discharged.

**MOCK, P.J.**, and **MYERS, J.**, concur.

Please note:

The court has recorded its own entry this date.